## McCoy *versus* Danley.

1. No man has a right to appropriate his neighbor's land to his own use, even for a temporary purpose.

2. The owner of a dam erected on his own land is responsible for all injury done to the land of his neighbor, arising from the usual, and ordinary and expected freshets occurring in the stream.

3. In an action *for continuing a nuisance* by means of a mill-dam, after a verdict for the plaintiff in a former action for the same injury, he is entitled to recover such damages as will punish the defendant and compel him to abate the nuisance: and this is the rule even though the erection is of great value to the defendant, and the injury to the plaintiff inconsiderable.

ERROR to the Common Pleas of *Washington county.*

This was an action brought to August Term, 1847, by Daniel McCoy *v.* William Danley. It was an action on the case for *the continuance* of a nuisance. After the suit was brought, William Danley died, and his administrators were substituted.

To August Term, 1844, Daniel McCoy brought his action against the defendant, William Danley, to recover damages for an injury done to the plaintiff's land by back water from a mill-dam erected on defendant's premises. In that suit the plaintiff recovered a verdict and judgment.

The defendant having neglected and refused to abate the nuisance, the plaintiff brought the present suit, in which he declared for *the continuance of the nuisance*, as suggested by ROGERS, J., in the case of Smith *v.* Elliott, 9 *Barr* 345; and gave in evidence the verdict and judgment in the former action.

On the part of the plaintiff it was proved that no change had been made in the dam since the former trial.

H

[McCoy *v.* Danley.]

After various offers made on part of plaintiff to prove injury to the plaintiff's land in consequence of the erection of the dam, during *the ordinary rises in the stream,* which were overruled, the Court deciding that the evidence should be limited to the injury sustained *at the ordinary stage of the stream,* evidence was given that if the dam was removed, the plaintiff's land would be dry and valuable; that the swelling in the stream was periodical; that in the spring of the year the plaintiff's land was covered with water for two weeks; and that most of the damage sustained arose from the common, ordinary, and expected *floods.*

On the part of the plaintiff the Court was requested to charge the jury:

1. That the verdict and judgment in the former suit were conclusive of the plaintiff's right to recover, and all the plaintiff is required to do is, to give in evidence the record of the former recovery, and prove that the nuisance remains in the same, or in a worse situation than before.

The Court charged in the affirmative; reference to 9 *Barr* 346.

2. That all streams are subject to periodical and expected floods, which occur at fixed times and seasons, which may be calculated upon with reasonable certainty, and for all damage occasioned by ordinary, common, and expected floods, the defendant is liable. That if the jury are satisfied, from the evidence, that regular and periodical freshets or floods occur at fixed times and seasons, in the stream in which the defendants' dam is built, they are bound to allow the plaintiff for all damage occasioned by the dam during those ordinary, common, and expected floods.

Answer. It is within the observation of all, that streams in this country are subject to periodical and expected floods, which occur generally at particular seasons every year—the nature and extent of these floods are well understood. Again, there are what may be called *extraordinary floods,* not occurring at stated periods, but happening once, perhaps, in the course of several years. We are not asked then to charge you that the defendants are liable in damages for injuries sustained for extraordinary floods, but for the usual ordinary and expected floods which occur in the course of every year. This we cannot do. The expression of the Supreme Court in the Monongahela Navigation Co. *v.* Coon, 6 *Barr* 383, is too plain and explicit for doubt. The rule there stated is, that a riparian owner is entitled "to swell water in the channel of the stream in its natural state up to his neighbour's line, and that he is not answerable for damage done by high water, however it may have been increased by the obstruction below." We say to you that the defendants are only liable for injury done by the swelling of the water at its ordinary stage, and we define an ordinary stage *to be the situation of the stream for the longest period exclusive of what might be called the dry season.* Then, whatever injury the

[McCoy *v.* Danley.]

plaintiff has sustained by the swelling of the water at its usual and ordinary state, he is entitled to recover.

3. That, after the former verdict and judgment, it was the defendant's duty to abate the nuisance, and that his continuance of it is to be regarded as an aggravation of the injury, and as enlarging the damages. That the plaintiff is entitled to recover exemplary damages in this suit. That the jury are bound to give such damages as will punish the defendant and compel him to abate the nuisance.

Answer. Damages are either nominal, compensatory, exemplary, or vindictive. We are asked to charge you that the plaintiff is entitled, in this case, to recover exemplary damages, which are such as will not only fully compensate the plaintiff but punish the defendants, and thus compel them to abate the nuisance. The jury are at liberty, in a case of this nature (which is nothing more than an inquest to ascertain damages), to give such damages as would compel the defendants to abate the nuisance, but they are not bound to do so; cases might occur where it would be highly unjust to compel a party defendant to pull down the erection which had been declared a nuisance, as when the continued injury to the party complaining is but insignificant, and the erection of great value. There it would be wrong to give exemplary damages. Again, the erection might be of no value, and the injury occasioned and continued great. In a case like this the damages should be such as would compel the party to abate the nuisance.

Error was assigned, in the first four assignments, to the rejection of the evidence; and in the *fifth*, to the refusal to charge as requested in the second point. In the *sixth*, in refusing to charge as requested in the third point.

*Acheson* and *Wilson* were for plaintiffs in error.—It was contended that though the defendant was not to be held responsible for consequences which it was *impossible* to foresee or prevent, yet, for all results from his own acts which were to be expected, and which arose naturally and produced injury to the property of others, he was answerable. The stream in this case was subject to periodical rises, and if the dam, during such times, was the means by which injury was done to the plaintiff, the defendant was liable: 4 *Rawle* 10, Lehigh Bridge Case; 9 *Watts* 119, Bell *v.* McClintock. In the latter case it was held that the owner of a dam was liable for damage done by *the ordinary and expected floods of the season*, but not for those which arose from extraordinary floods.

The third point was not answered. The Court did not charge whether it was the duty of the defendants, after the former verdict and judgment, to abate the nuisance; nor whether the continuance

[McCoy v. Danley.]

of the nuisance was to be regarded as an aggravation and as enlarging the damages. Also, the giving or withholding exemplary damages does not depend *on the extent of the injury as compared with the value of the erection.* A nuisance may be abated: 2 *Barr* 114; 5 *Wharton* 584. The party injured should have an equally efficacious remedy by action.

*Montgomery*, for defendants in error.—The mill-dam was an old one. In an ordinary stage of water, the stream did not rise above the banks of the plaintiff's land; but the damage done was produced by the *floods.* It was contended that an owner of land through which a stream runs, has *a right to back* the water to the *upper line* of his land: 3 *Rawle* 90; 17 *Ser. & R.* 373; 1 *Rawle* 218; 3 *Kent* 356; *Angel on Water Courses* 67–8–9; 4 *Mason* 404; 6 *Barr* 382–3, Monongahela Navigation Company v. Coon. If he were liable for the effects of ordinary floods he would have to leave a part of his fall unused, so as to avoid injury to the land of his neighbor above him on the stream.

The opinion of the Court was delivered by

BLACK, C. J.—This was an action on the case for erecting a dam by which the water of the stream was penned back so as to overflow the plaintiff's land above. Evidence was offered to show the injury which had been caused by the structure at times of ordinary and natural rises in the stream; at regular and periodical rises; at times of high water occurring at the usual flood seasons; and at times of ordinary and common freshets. All this was rejected, and the Court held in the charge that there could be no recovery except for damage done by swelling back the water at its ordinary stage, and this was defined to be that situation in which it remains longest, excluding the dry season.

We find no authority for this rule. One objection to it is the extreme difficulty of its application. In this country there is no dry season, properly so called. We have periods of drought which come irregularly and at all times of the year. The streams rise immediately after a rain or the melting of the snows, and the fall begins as soon as the rise ceases. That they ever remain in one situation for a perceptible length of time would be hard to prove. If they do, it would require an observation so close and so constant to know in what situation they remain longest, that no person of ordinary habits could be expected to tell it. No two witnesses would be likely to agree even upon their average height during a given time.

But suppose the ordinary situation of a stream according to this definition of it could be ascertained with tolerable accuracy, we think a dam which backs the water on the land of the proprietor above during every spell of wet weather, is something more than

[McCoy v. Danley.]

*damnum absque injuria.* If not, a man, whose farm consists of a low creek bottom, is at the mercy of his neighbor below. His trees may be killed, his crops destroyed, his springs drowned, his house rendered uninhabitable, and his land made worthless, not only while the overflow lasts, but by the pools of stagnant water left standing on it afterwards. And all this must be the necessary consequence, not of great floods, which, like other inevitable calamities, are to be borne without complaint, but of every ordinary freshet caused by the usual rains which are expected with as much confidence as we look for the return of summer and winter. The law would be very defective if it did not protect men from wrongs like these in rainy as well as in dry seasons; and since every year brings its alternations of high water and low, a person who erects a dam is bound to foresee the one as much as the other. It often happens that small mills for grinding, sawing, or other purposes, are erected on streams too weak to turn them except at high water. Suppose two such mills are on the same creek, the owner of the lower one, according to the defendant's doctrine, can say to the other, "you may use your machinery, if you can, when there is not water enough to drive it; but when the rise comes, I claim the right, and will exercise it, to pen the water back upon you and stop your wheel." If one party may do this with impunity, and the other must submit without a remedy, what becomes of the maxim *Sic utere tuo ut alienum non lœdas*?

The opinion in the case of the Monongahela Navigation Company v. Coon, 6 *Barr* 379, which seems to have misled the Court of Common Pleas, does not go the whole length they seem to have thought. The judge who delivered that opinion speaks throughout, not of the usual high water, but of floods which occur on extraordinary occasions. Besides, the point was not before him at all; and he was not required to speak with precision. The only point decided there which makes that case akin to this one, was, that under the act of Assembly the defendants were responsible for all damage caused by their dam under all circumstances. The remarks about the rights and duties of riparian proprietors differently situated were but *obiter dicta;* and there is nothing in them from which we infer that the Court then considered a common freshet, such as may probably happen any month in the year, to be an extraordinary occasion, of which one who built a dam was not required to calculate the effects.

But this question did arise in Bell v. McClintock, 9 *Watts* 119, and it was decided, not under the act making Oil creek a public highway (for the statute did not either create or change the rights of the parties), but, according to the principles of the common law, that one who erects a dam is responsible for all the injury caused by it in times of usual, ordinary, and expected freshets. *A flood* is another thing. It may not come for years

[McCoy v. Danley.]

together. When it does come, it is a visitation of Providence, and the destruction it brings with it must be borne by those on whom it happens to fall.

This was a *second* suit for the same injury. The first had resulted in a judgment for the plaintiff. The Court properly held, that the record in the former case was decisive of the parties' rights. The plaintiff submitted, that the jury were bound to find such damages as would punish the defendant, and compel him to abate the nuisance. But this the Court denied to be law in a case where the erection complained of was of great value to one party, and the injury to the other insignificant. In this we cannot concur. The usufruct of water belongs to the owners of the land through which it passes. It is property to all intents and purposes. If one uses it in such a way as to prevent another, whose right is as good as his, from using it for a similar purpose, or if he interferes in any injurious way with its natural flow through the land of his neighbor above or below him, he is taking another man's property for his own purposes, and this he can never do without a contract. He who desires to have a water-right which does not belong to him, must bargain for it, as he would do for anything else. The law will not allow the owner to be deprived of it because he does not use it profitably; nor compel him to part with it against his will, even for a full price. The plaintiff's right, therefore, to have the dam in question reduced, and to be restored again to the full enjoyment of his own property, was absolute, and in no manner or degree dependent on its value to his adversary, or the quantum of injury done to himself. The first action in such cases is generally brought to test the parties' rights. In the absence of malice or aggravating circumstances, compensatory damages are enough; for it cannot fairly be presumed, that any one would maintain a nuisance in the face of a judicial decision conclusively fixing its character. But if he will not abate it, he may be compelled to do so in a second action. And how shall he be compelled to do it, except by a verdict which makes it his interest? The point on this subject should have been answered in the affirmative, and the jury instructed to see, not only that the plaintiff lost nothing, but that the defendant gained nothing by disobedience of the law.

LOWRIE, J.—The prevailing and controlling error in the trial of this cause is, in holding that a man may erect a mill-dam on his own land so as to throw the water back to his neighbor's line, in the ordinary stage of the stream, even though the consequence be, that, in its natural and ordinary swellings in some seasons of the year, his neighbor's land is overflowed. The correction of this error will, of itself, modify some other points ruled by the Court below.

[McCoy v. Danley.]

No man has a right to appropriate any portion of his neighbor's property to his own use, even for a temporary purpose. If he may take his neighbor's land at frequent and uncertain periods in every year, he may as well take it altogether, for his neighbor cannot use it. If it is very important for him to have it, let him buy it. If he invades it improperly, let him suffer as a wrong-doer.

*Ordinary :* the error is in the use of that word. A distinction is taken between the ordinary stage of the water, and at its ordinary stage at particular periods. The former is without meaning unless it means *the average stage ;* for there is no ordinary stage of any stream in this country for the year round. A man may make his dam according to the ordinary, but not according to the average stage of the stream. But what is the ordinary stage ? That depends upon seasons and weather. The ordinary stage, in ordinary rainy seasons, is one thing, and in ordinary dry seasons, is another. The ordinary stage in March is high, in August, low. The ordinary rises of streams are matters which every one is expected to provide against, because, with ordinary care, he can calculate upon them. The owner of a dam is not answerable for damages caused by his dam, combined with an act of Providence. But an act of Providence, in legal phraseology, means an accident against which ordinary skill and foresight is not expected to provide. It does not include those floods which happen so frequently that men of ordinary prudence are expected to calculate upon them ; and, against such swellings, the defendant was bound to provide when he erected his dam ; and if he did not do so, he should be compelled to lower it, if the plaintiff insists.

Judgment reversed and a new trial awarded.