THE WATER COMMISSIONERS OF THE CITY OF NEW BRUNSWICK, PLAINTIFFS IN ERROR, v. CALEB H. CRAMER, DEFENDANT IN ERROR.

1. To work an estoppel of record, a former judgment between the parties to an action must be pleaded, if there be opportunity to plead it, and must be proved to be directly upon the point in question. *Quære.* Can there be a collateral estoppel of record on matter of public law?

2. Under a municipal charter, certain water commissioners are required to elect annually one of their number to be president of the board, who may, under their direction, have the general superintendence of the water works and the business of the board, and are empowered to elect a treasurer. They are also authorized to appoint and employ all proper assistants, officers, agents and clerks. These commissioners, by resolution and written contract, assumed to appoint and employ C. H. C. for five years, at a stated compensation, to perform, under their direction, the duties of general superintendent of the water works and if desired, the duties of treasurer of the board, without further compensation. After some fifteen months he was discharged and another person was appointed in his stead. He sued for compensation under the contract. *Held,* that the duties of this employment were incidental to public offices created by law and could not be made the subject of a contract extending beyond the term of a president or treasurer incumbent. . Such contract was *ultra vires.*

On error to the Supreme Court.

For the plaintiffs in error, *Robert Adrain.*

For the defendant in error, *Abraham V. Schenck.*

The opinion of the court was delivered by

COLLINS, J. This writ of error reviews the judgment of the Supreme Court on a case reserved, turned by leave into a special verdict for the purpose of permitting a writ of error.

The state of the case discloses the following facts : On February 8th, 1892, the board of water commissioners of the city of New Brunswick, by resolution, appointed the plaintiff general superintendent of the water works of the city, and the parties entered into a written contract, whereby it was agreed that the plaintiff should perform the duties of such position for five years and the board should pay him the yearly sum of $2,500 in monthly payments. It was also agreed that the plaintiff should, if desired, perform the duties of treasurer of the board without further compensation. On June 12th, 1893, the board, by resolution, declared vacant the position of superintendent of the water works and appointed another person thereto. The plaintiff tendered himself ready and willing to perform his duties but was refused permission to do so. He has renewed his tender each month with like result and has presented monthly bills. His suit is for the equivalent of compensation under the contract, from July 1st, 1893, to December 31st, 1895, with interest on the monthly installments. He has diligently sought other employment without success, except that he has been employed, without compensation, as an officer of a corporation in which he is interested.

It is claimed that the case also shows that before the suit was brought the plaintiff had recovered under said contract a judgment for the value of his services for June, 1893, and that therefore his right to recover in this suit, under the same contract, is *res judicata.* This claim cannot be sustained.

An estoppel of record, to be effectual, must be pleaded if there be opportunity to plead it. *Ward* v. *Ward,* 2 *Zab.* 699 ; *Black Judg.,* § 784.

Not only did the plaintiff fail to plead such former judgment in his declaration, but he did, in fact, therein aver that he had performed and been paid for the services agreed on in the contract up to July 1st, 1893. He met the defence, set up by notice in lieu of plea, by an answering notice, on the merits, without reference to any former adjudication.

Nor was any estoppel of record established by proof. It was indeed admitted by the defendants that the plaintiff had " brought a suit in the Supreme Court for $208.33 for services for the month of June, 1893, under the contract, and interest on the same ; that there was a verdict in his favor at the April Term, 1894, of the Middlesex Circuit ; that a rule to show cause was thereupon granted, which was discharged at the February Term, 1895, of the Supreme Court; that the defendants paid the judgment and that the case is reported in 28 *Vroom*, *p.* 478 ; " but the record was not produced and there is no competent evidence of the issue tried and determined.

The decision cited does deal with the legal question now being litigated, but it is entirely possible that a judgment for compensation for a month, during a part of which the defendants had accepted the plaintiff's services, might, under the pleadings in the case, have been warranted without involving an adjudication that the contract was enforceable as to subsequent compensation. The admission was made in order to explain why counsel did not intend to argue the point involved in the former decision, and it was coupled with the statement that it was the purpose of the defendants to review that decision by means of a writ of error to be brought upon any judgment against them in the pending cause. *Stare decisis,* not *res judicata,* was the obstacle confronting the defendants at the trial. Had any purpose to claim an estoppel been disclosed they could have objected to the evidence as not within the pleadings, and had the record of the judgment been produced they might have shown that it did not estop their defence. To work an estoppel a former judgment must be directly in point and must involve the

identical matter presented in the new action. This rule is strict. *Hopper* ads. *Chamberlain*, 5 *Vroom* 220; *Mutual Fire Insurance Co.* v. *Newton*, 21 *Id.* 571; *Cromwell* v. *County of Sac*, 94 *U. S.* 351.

It must not be understood, however, that had the former judgment been pleaded and proved, it would have been an estoppel of defence to the plaintiff's suit. The decision turned on a pure question of public law, and there is very respectable authority that such a question may be reconsidered in a subsequent controversy between the parties, involving identical facts.

In *Boyd* v. *Alabama*, 94 *U. S.* 645, the Supreme Court of the United States held that *res judicata* would not preclude inquiry into the constitutionality of a statute interpreted as if valid in a former cause between the same parties, and held to make a contract between the state and the defendant on facts proved in both causes. The case is not decisive, for it was on an indictment, but the principle is plainly declared. In *Brownsville* v. *Loague*, 129 *U. S.* 493, the same court looked through a judgment, founded on coupons, to the statute under which the bonds were issued, and, finding it invalid, refused a *mandamus* to raise a tax to pay the coupons, although merged in the judgment. The judgment stood as such, but was held not to bar an inquiry into the law. The doctrine that the estoppel of a judgment is complete on the facts, but not on the law, is approved by Mr. Bigelow in his work on Estoppel (5th ed.), page 100. In this state a close precedent to the case in hand has stood unquestioned since 1859. It is the decision of the Supreme Court in *Bernard* v. *City of Hoboken*, 3 *Dutcher* 412. The situation was this: The city, under its charter, had, by an ordinance that was claimed to make a contract, established a police force for two years, with the plaintiff as a member. After his discharge, on the disbanding of the force at the end of a half year, he brought suit and recovered the equivalent of his compensation up to the time of the bringing of his suit. In a later suit for compensation for the residue of the term, it was held that the

former judgment did not estop the defence ; that as the plaintiff was a public officer, he was subject to discharge, notwithstanding an employment by contract for a fixed term. The decision was put on the ground that this question of law was not concluded by the former judgment.

I proceed, therefore, to the merits of the defence urged to the plaintiff's suit.

The water works of the city of New Brunswick were, by authority of the city charter (*Pamph. L.* 1873, *p.* 450), purchased from a private company, and, under the same enactment, are controlled as follows :

" Sec. 2. That the said water works shall be conducted and managed by a board of commissioners to be appointed by the common council, who shall hold their office for three years, one-third of them to be appointed yearly; that all the authority, powers and duties relative thereto now exercised or performed, or that hereafter may be exercised or performed by the said company, shall be exercised and performed by the said commissioners (except as thereinafter provided) ; and in pursuance of this authority, the said commissioners may appoint and employ all proper assistants, officers, agents and clerks necessary or convenient for the purpose aforesaid, at such compensation as they may deem reasonable, and shall take from their treasurer and such other officers and agents as they may appoint, such bonds and sureties for the faithful performance of their duties as they may deem proper.

" Sec. 3. That the said commissioners shall elect annually one of their number to be president of the board, who may, under their direction, have the general superintendence of the water works and the business of the board ; the said president, or in his absence one of the said commissioners appointed by the said board for the purpose, shall sign all contracts and all orders on their treasurer for the payment of moneys which may be authorized by said commissioners.

" Sec. 10. That the contracts and engagements, acts and doings of the said commissioners, within the scope of their duty or authority, shall be obligatory upon and be in law

considered as done by the mayor and common council of the city of New Brunswick, and any judgment recovered against the said commissioners in their official capacity shall have the same force and effect and be enforced in the same manner as if the same had been rendered in an action against the city in its corporate name."

The defendants insist that under this statute the contract with the plaintiff was beyond the power of their predecessors who made it.

The Supreme Court, in its judgment now under review, followed the decision in the former suit on the same contract, to which allusion has already been made. That decision declared the grant of power conferred by section 2 above quoted to be broad enough to warrant any contract with an employe not a public officer. The discretion of the board, both as to salary and time, was held to be unlimited. I do not dissent from that view. It was correctly assumed, and is now conceded by the plaintiff, that a public office cannot be the subject of a contract. It was further held that such a position as superintendent of water works, created not by statute but by appointment under a general power to "appoint and employ all proper assistants, officers, agents and clerks," is not a public office but is a mere employment. The industry of the learned counsel for the plaintiff has supported that decision with many others of like purport from the courts of sister states and of the federal jurisdiction. I do not question their correctness. The real defence to the plaintiff's action was not made in the Supreme Court, or at least was not there discussed. It is this, that the duties embraced in the contract for the plaintiff's services are attached by the statute to public offices thereby created. Of course, the president and treasurer of the board of water commissioners are public officers. Attached to the office of president is the right to have, "under direction" of the board, "the general superintendence of the water works."

The plaintiff's contract was to perform the duties of "general superintendent of the water works of the city of New

Brunswick, under the direction of the board of commissioners thereof," for five years, at the salary fixed. It is frankly stated in the brief of plaintiff's counsel that " Mr. Cramer under the contract in question was, in fact, and was designed and intended to be simply a substitute for and a subordinate of the president of the board of commissioners, and who, in his place and under their direction, should, in the language of the act of 1873, ' have the general superentendence of the water works.'" Granting the power of the board with the assent of the president to afford him a salaried substitute or subordinate, it seems to me clear that such power is limited by the official tenure of the president himself. He is elected annually. The commissioners cannot make a contract that will take from future presidents their statutory right. If they can put upon a stranger a part of the duties of the president, they can so confer all the powers of that office. The board may indeed direct; but the direction must be to the officer created by the law. Change the designation in the contract to its admitted equivalent and the infirmity of such a contract will more plainly appear. No one will contend that the commissioners have power to appoint a " substitute-president " to perform under their direction a part of the statutory duties of the president, and make with their appointee an irrepealable contract to pay him a salary for five years; yet this is what was in effect attempted.

The contract further provided that, if so desired, the plaintiff should perform the duties of "treasurer of the said board (giving such bond as may from time to time be required of him by the said board) without any further or additional compensation therefor." The right to plaintiff's service in the capacity of treasurer must have entered into the consideration of the contract, and, while the board did not assume to bind itself or its successors to a fixed term for the treasurership, a new board could not, if this contract were valid, make a change to another salaried treasurer without entailing on the public pecuniary loss. In effect the attempt was to appoint a treasurer for five years, which, of course, is not warranted

by the statute. The contract of the water commissioners was plainly *ultra vires*.

I shall vote to reverse the judgment and to remit the record to the Supreme Court for the entry there upon the special verdict of a judgment for the defendants.

*For affirmance*—GUMMERE, LUDLOW, VREDENBURGH. 3.

*For reversal* — THE CHANCELLOR, COLLINS, DIXON, GARRISON, ADAMS, BOGERT, HENDRICKSON, KRUEGER, NIXON. 9.