# Marianne Hartman *v.* The Pittsburg Incline Plane Company, Appellant.

*Evidence—Continuing nuisance—Res adjudicata.*

In an action for the continuance of a nuisance, a verdict and judgment for the plaintiff in a former action, in which the same matter was in controversy between the parties, are conclusive evidence.

*Presumption as to ownership of property—Nuisance.*

Ownership of property once established is presumed to continue until some change or alienation is shown, and where question and answer without objection assume the ownership of the property in question, on which a nuisance exists, to be in defendant it would have been manifest error for the court to have instructed the jury that there was no evidence that the property complained of belonged to, or was maintained by, the defendant.

*Charge of court—Comment on omission of testimony.*

The nonproduction of pertinent evidence, which, if it exists, is peculiarly within the control of the parties whose interest it would be to produce it, is of itself, often a circumstance of greater or less weight which a jury may take into consideration, and it is not reversible error for the trial judge to call their attention to it, provided he does it fairly and without giving binding instructions as to the effect of the omission.

*Continuing nuisance—Corporation—Eminent domain.*

The fact that a defendant is a quasi-public corporation, invested with the right of eminent domain, is not of itself conclusive against the right of an adjacent landowner, to maintain a second or third action for what, if maintained by a private person, would be a continuing nuisance.

*Continuing nuisance—Estoppel—Former action.*

Former recoveries against a corporation, endowed with the rights of eminent domain, for constructing an incline plane so as to be a continuing nuisance do not estop an adjacent landowner from recovering damages which have accrued since such former actions.

Argued April 10, 1899. Appeal, No. 2, April T., 1899, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1897, No. 216, on verdict for plaintiff. Before Rice, P. J., Beaver, Orlady, Smith, W. W. Porter, W. D. Porter and Beeber, JJ. Affirmed. Opinion by Rice, P. J.

Trespass for injuries to a dwelling house caused by a continued maintenance of defendant's inclined plane. Before Kennedy, P. J.

The original action resulting in a judgment of nonsuit was tried before COLLIER, J., and this judgment was reversed by the Supreme Court as reported in 159 Pa. 442. At a second trial defendant tendered a judgment for the amount of plaintiff's claim. Subsequently a second action was brought for damages resulting from the continued maintenance of the alleged nuisance at a trial before SLAGLE, J., and a verdict and judgment rendered for the plaintiff for $613.36, which was affirmed on appeal to the Superior Court as reported in 2 Pa. Superior Ct. 123.

The present action was brought to recover damages resulting from the time of the second action until date of suit brought in this case. At the trial plaintiff proved title to ' her property, defendant's incorporation, the former recoveries and the present condition of defendant's property.

Defendant submitted the following points :

[1. The burden is upon the plaintiff affirmatively to show that the injury complained of is the result of maintaining the nuisance complained of in plaintiff's statement of claim, in practically the same condition it was at the time of the verdict in the suit between the same parties at No. 994, June term, 1894, and the plaintiff having failed to produce any testimony tending to so show, the verdict should be for the defendant. *Answer :* Refused.] [1]

[2. The plaintiff having failed to produce any evidence that the structure complained of in the statement of claim belongs to or is maintained by the defendant, the verdict of the jury must be for the defendant. *Answer :* Refused.] [2]

[3. Under all the evidence in the case the verdict of the jury must be for the defendant. *Answer :* Refused.] [3]

[4. Defendant being a corporation vested with the right of eminent domain and authorized to construct and maintain the structure complained of, and the plaintiff having in a prior case recovered for damages resulting therefrom, the plaintiff is now barred from recovery for a continuation of the injuries resulting from said structure. *Answer :* Refused.] [4]

The court charged the jury in part as follows :

[If they (meaning defendant) had so shown to you that they had remedied the improper construction of the wall after

the other suits, or if they had shown that the cause of this injury to the plaintiff's property was a new one, not resulting from this negligent maintenance of the wall by the defendant company, then that would be a defense to this action.    But, as I recall the testimony, there has been nothing shown on the part of the defense that they attempted to remedy the improper construction of this wall.]  [5]

Verdict and judgment for plaintiff for $262.    Defendant appealed.

*Errors assigned* were (1–4) refusing defendant's points, reciting same.    (5) To portions of the judge's charge, reciting same.

*Walter Lyon,* of *Lyon & McKee,* with him *A. W. Duff,* for appellant.—The testimony did not fulfil the requirements necessary to prove a continuing nuisance, and if plaintiff recovers at all it must be upon the theory that the structure is a continuing nuisance :  Kilheffer v. Herr, 17 S. & R. 319;  Smith v. Elliott, 9 Pa. 345.

Four links were missing from plaintiff's chain of evidence, and even conceding the legal right to recover, the chain was altogether defective, and the points upon which the assignments are based should have been affirmed.   The court not only refused to affirm the points, but in the oral charge to the jury, in the language quoted in the fifth assignment of error, said if the defendant had shown that it had remedied the improper construction, or had shown the cause of the injury was a new one, that would have been a defense, but stated that there had been nothing shown on the part of the defense that it attempted to remedy the improper construction of the wall.

This simply shifted the burden of proving the material averments in plaintiff's statement upon the defendant instead of the plaintiff, and certainly was error.

The structure is part of defendant's road or incline, permanent in its character, lawfully constructed, and whether constructed in a manner causing damages or not, one recovery bars subsequent ones :  Stodgill v. Railroad Co., 53 Iowa, 341;  Bizer v. Hydraulic Power Co., 70 Iowa, 145;  C. & E. I. R. R. Co. v. Loeb, 118 Ill. 203;  Indiana B. & W. R. Co. v. Eberle, 110 Ind. 542;  Kansas Pacific v. Mihlman, 17 Kan. 224.

Such is the law in Pennsylvania, where it is held that damages, past, present and future, are to be estimated in one action, and that the damages are measured by the difference in the value of the land immediately before and after the injury: Water Co. v. Iron Co., 84 Pa. 279 ; Vanderslice v. Phila., 103 Pa. 102; Pittsburg Junction Railroad Co. v. McCutcheon, 18 W. N. C. 527 ; P. & L. E. R. R. Co. v. Jones, 111 Pa. 204.

*William Yost*, for appellee.—It would seem that by this time the legal principles governing this controversy should be well nigh settled.    The first action was appealed to the Supreme Court and decided in Hartman v. Pittsburg Incline Plane Co., 159 Pa. 442, and Hartman v. Pittsburg Incline Plane Co., 2 Pa. Superior Ct. 123.

This is the third action brought for the continuance of the same nuisance.

The appellant's contention that there " were missing links from plaintiff's chain of evidence," is not sustained by the testimony in print.    The records of the former trials establish the defendant's ownership of the incline, the negligent construction of the wall, the resulting damage to the plaintiff continued for several years, and incidentally, everything necessary to a recovery except the amount of damage and the continuance of the same.    It is said that the continuance of the wall was not shown.    The photographs were in evidence, and a few extracts from the testimony will suffice to show that it existed as originally constructed.

Nearly every witness called described the incline as existing at the time of the trial exactly as shown on the photographs, which were used on the former trial.

The argument that the construction of the incline amounted to an appropriation of the plaintiff's property, so that no recovery after the first one could be had, has so little to rest upon that it is difficult to discuss.

Originally the plaintiff sought to recover upon that basis, but the Supreme Court held that no recovery could be had for consequential injuries: Hartman v. Incline Plane Co., 159 Pa. 442.

The second trial was had for a continuing nuisance and the judgment was affirmed by the Superior Court: Hartman v. Pitts. Incline Plane Co., 2 Pa. Superior Ct. 123.

Whether this contention of the appellant was submitted to the Superior Court on the former case, matters not. It might have been submitted, and it is therefore adjudicated in that case.

The whole subject has been recently and ably reviewed by Mr. Justice Dean, in Bell v. Allegheny County, 184 Pa. 296.

Opinion by Rice, P. J., October 9, 1899 :

In an action for the continuance of a nuisance, a verdict and judgment for the plaintiff in a former action in which the same matter was in controversy between the parties, are conclusive evidence, "for when a court of competent jurisdiction has adjudicated directly upon a particular matter, the same point is not open to inquiry in a subsequent suit for the same cause, and between the same parties : " Kilheffer v. Herr, 17 S. & R. 319 ; Bell v. Allegheny Co., 184 Pa. 296, and cases there cited ;. Hartman v. Incline Plane Co., 2 Pa. Superior Ct. 123. Applying this well settled principle to the case in hand, we must hold that the two former recoveries are conclusive adjudications : (1) that the structure described in Hartman v. Incline Plane Co., 159 Pa. 442, was erected by the defendant and was maintained by it down to, and including, the time of the grievance complained of in the second suit ; (2) that it was negligently or improperly constructed ; (3) that, by reason thereof, it was the cause of the injuries complained of in the former suits,. namely, that the brick wall of the plaintiff's house became, and was kept, so saturated with water that the plaster and paper on the inside were injured, and some of the rooms were rendered damp, mouldy and untenantable.

1. Having proved by the record of the charter, itself, the incorporation of the defendant for the erection and maintenance of an inclined plane railway, and by the records of the two former suits that the structure was erected and maintained by it (admittedly on its own land), as part of its road, it might well be presumed, in the absence of any evidence to the contrary, that it continued to be the responsible owner of it. We say this, not because the records of the former suits have any conclusive effect as proof of present ownership,—the case would be the same if the original construction and ownership had been proved in any other way,—but because of " the experienced con-

tinuance or permanency of longer or shorter duration in human affairs : " 1 Greenleaf on Evidence, 41.   When a person is shown to have been the owner of property, such ownership is ordinarily presumed to continue until some change or alienation is shown : 1 Jones on Evidence, 53 ; 2 Wharton on Evidence, 1286.   This is a very reasonable presumption when the person shown to have been the owner is a party to the suit, and offers no evidence to show that he has parted with the ownership or control.   But the plaintiff's allegation does not rest for support on this presumptive evidence alone.   Throughout the trial, in the questions put to the witnesses and in the answers given by them, the structure is spoken of as the wall or abutment of the Incline Plane Company, or of the Pittsburg Incline Plane Company.   No objection was raised to these questions and answers, no suggestion was made that more explicit proof would be required, and the defendant did not offer to show that it had parted with the responsible ownership of the property.   The plaintiff, the court, and the jury might well have assumed that the fact was not in controversy.   At all events, it would have been manifest error, if the court had affirmed the defendant's second point, and charged the jury that there was no evidence that the structure complained of belonged to, or was maintained by, the defendant.   The second assignment is overruled.

2. Equally untenable is the position, that there is no evidence that the nuisance, the existence of which was conclusively established by the former judgments, was continued.   It is true, none of the plaintiff's witnesses testified in so many words, that the defendant's structure remained in precisely the same condition after the trial of the second suit as before.   It does, however, plainly appear from their testimony, fairly interpreted, that the structure was still maintained, and that the plaintiff's building continued, without interruption, to be injuriously affected in precisely the same manner and place as before.   It was a fair inference of fact, in the absence of evidence of a new cause for the continuance of the injury, or of an alteration of the structure, that the defects in it had not been removed. This is not casting the burden of proof on the defendant, but simply permitting the jury to draw a very natural and legitimate inference from the facts proved.

The portion of the charge made the subject of the fifth assign-

ment should be read with the context, in which the question whether the damage to the plaintiff's property was the result of the continued maintenance by the defendant of the negligently constructed structure was fairly left to the jury. The nonproduction of pertinent evidence, which, if it exists, is peculiarly within the control of the parties whose interest it would be to produce it, is, of itself, often a circumstance of greater or less weight which a jury may take into consideration, and it is not reversible error for the trial judge to call their attention to it, provided he does it fairly, and without giving binding instructions as to the effect of the omission. See 2 P. & L. Dig. of Dec. and Ency. of Pa. Law, 2681, Ginder v. Bachman, 8 Pa. Superior Ct. 405, and cases there cited. The first and fifth assignments are overruled.

3. The fourth assignment is based on the proposition that the defendant being a corporation, invested with the right of eminent domain, and authorized to erect and maintain the structure complained of, the plaintiff, having in a prior case recovered damages resulting therefrom, is barred from a recovery for a continuation of the injuries. In considering this proposition it is to be noticed that the plaintiff is a life tenant, and that in the former actions, she sued for and recovered damages for the injury to her possession, merely, which had accrued during the periods ending respectively on the date of the confessed judgments in the first action, and of the trial of the second action. If, therefore, she is precluded from recovering in the present action, the damages she has sustained since, it is not because the former recoveries actually included all the damages past and prospective to her estate. It is to be observed further, that in the second suit the plaintiff alleged, and recovered on the ground, that the injury was wrongfully continued after the judgment in the first suit. This was an essential part of her case. "The rule that what has been judicially determined shall not again be made the subject of controversy, extends to every question in the proceeding which was legally cognizable, and applies where a party has neglected the opportunity of trial, or has failed to present his case or defense, in whole or in part, under the mistaken belief that the matter would remain open and could be made the subject of another proceeding. . . . Generally the estoppel extends to any allegation which was at issue and determined

in the course of the proceeding, which went to establish or disprove either the plaintiff's case or that set up by the defendant:" Schwan v. Kelly, 173 Pa. 65. The question raised, namely the bar of the first recovery, was legally cognizable in the second suit, and, whether urged upon the attention of the court or not, it may be argued with much force that the recovery in that suit was an implied adjudication that the injury to the plaintiff was not in its nature, and at its inception, a complete and permanent one, for which, in fact or presumably, she had recovered compensation, but was what she claimed it to be, a continuing tort resulting in further damages. But, be that as it may, we are not willing to concede that the fact that the defendant is a quasi-public corporation, invested with the right of eminent domain is of itself conclusive against the right of an adjacent landowner, to maintain a second or third action for what, if maintained by a private person, would be a continuing nuisance. In a case relied on by the defendant's counsel, and which goes as far as any to sustain his proposition, the rule was stated thus : " But even where the injury complained of, either by a servient owner or an adjacent proprietor, is due to the negligent construction of such public works as railways, which it is the policy of the law to encourage, if the injury is permanent, and affects the value of the estate, a recovery may be had at law of the entire damages in one action: " Ridley v. Seaboard R. R. Co., 118 N. C. 996 ; 32 L. R. A. 708. Grant this to be the general rule even in case of a negligent construction, yet it is seen that it applies only to cases where " the injury is permanent and affects the value of the estate." This important qualification of the rule is. recognized in our own cases. Where the damages for the tort have been assessed upon the principle which governs in proceedings where land is taken, injured, or destroyed in the lawful exercise of the right of eminent domain, it has been because the plaintiff's property was permanently appropriated or injured, or the injury to it resulted from a cause which was either permanent in its character, or was treated as permanent by the parties. But there is no conclusive presumption that the injury of which the plaintiff complained resulted from a cause that was permanent, in the sense that it was an inseparable incident to the construction and operation of the defendant's road, or even to the mainte-

nance of the structure. The question whether a tort is or is not permanent is one of fact, depending upon the circumstances of each case: Sedgwick on Damages, 924; Seely v. Alden, 61 Pa. 302; and neither the fact that the tort feasor is invested with the right of eminent domain, nor the fact that the negligently constructed structure is permanent, is invariably and under all circumstances conclusive of the question. If, for example, the defects in it which are the causes of the injury could be remedied without affecting the purpose for which it was erected, and perhaps at trifling expense as compared with the damages that would have to be paid, if it were to be permanently maintained in an unaltered condition, no one would contend that the damages must necessarily be measured by the difference between the value of the land immediately before the erection, and its value as affected by the completed structure. In such a case (which is a supposable one here, for aught that the records of the former recoveries show), the defendant not only might assent to, but might properly insist upon, having the plaintiff's damages assessed upon the theory that the injury was not in its nature one that was to continue indefinitely. The point is well illustrated in a Massachusetts case. In an action for injuries alleged to have resulted to the plaintiff's land from a negligent construction and maintenance of a dam and reservoir on the defendant's land, it was held that only the damages which had accrued prior to the commencement of the action could be recovered. The court said: "The defendant may prefer to change his use of his property so far as to make his conduct lawful. In the present case, we cannot say that the defendant may not repair or reconstruct its dam and reservoir in such a way as to prevent percolation, with much less expenditure than would be required to pay damages for a permanent injury to the plaintiff's land:" Aldworth v. City of Lynn, 153 Mass. 53. If there be different modes of measuring damages depending on the circumstances, the evidence should be heard and the jury instructed according to the nature of the case: Seely v. Alden, 61 Pa. 302. The evidence given on the former trial is not before us, but, presumably, the damages were measured in the mode which it justified. Certainly there is no conclusive presumption that the injury alleged and proved there was, in its very nature, permanent. We con-

clude, therefore, without further discussion, that the former recoveries did not estop the plaintiff from recovering damages that have accrued since. The fourth assignment is overruled.

Whether or not the defendant might have elected in the present action, or may elect in any future action, to have the tort treated as a permanent one, and have the damages assessed on that basis, and thus end further liability, is a question not distinctly raised by the record, and therefore we will not discuss it.

The judgment is affirmed.