**PAYNE, Federal Agent of Railroads, v. BEVEL.**

No. 12183—Opinion Filed Dec. 4, 1923.

Rehearing Denied Feb. 19, 1924.

Second Rehearing Denied April 8, 1924.

**1. Judgment—Conclusiveness—Recovery for Damages to Land from Railroad Embankment as Bar to Subsequent Action.**

Where a party in a suit against a railroad for damages from overflow caused by an embankment made by the railroad in constructing its roadbed elects to treat the cause as permanent and not abatable by the use of labor or money, and recovers judgment for the full value of his land, neither he nor his successor in title can maintain an action for damages against said railroad for an overflow of the same land from the same cause.

**2. Same.**

The record in this case shows that some three or four years prior to the bringing of this suit, the predecessor in title of the plaintiff in this suit brought suit against this same railroad for damages to the same land and recovered judgment for the full value of the land, and the railroad paid said judgment. Held, that same is a bar to this action.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by J. M. Bevel against John Barton Payne, Director General of Railroads, as Agent under section 206 of the act of Congress approved February 28, 1920. Judgment for plaintiff, and defendant appeals. Reversed.

M. D. Green and H. L. Smith, for plaintiff in error.

H. West and King & Crawford, for defendant in error.

Opinion by MAXEY, C. This action was brought by defendant in error, hereinafter called plaintiff, against the plaintiff in error, hereinafter called defendant. The action is for damages caused to plaintiff's crop and land by overflow caused by a railroad embankment which changed the natural course of water and caused the overflow of plaintiff's land. The defendant set up in its answer, among other things, a plea of res judicata, wherein it says that in a former suit by William McDaniel, the then owner of the title to said land, against Charles Schaff, the receiver of properties of the defendant railway company, said William McDaniel in his petition in that case alleged:

"That said railway company's line of railroad now operated by receiver as aforesaid, runs across the northwest quarter (N. W. ¼) of the northwest quarter (N. W. ¼) of section 17, T. 25 N., R. 15 E., of said land; that at a point about 400 yards north of the station at Tyrola, Oklahoma, on said line of road, defendant's line of railway crosses a natural water course as it enters said above described land and that through said land the roadbed is thrown up on a grade of from three to ten feet higher than the surrounding lands, and plaintiff avers that these conditions existed at and before the time said receiver was appointed and have continued to exist since that time and that both the railway company and receiver are and were well aware of said conditions and that each has wholly failed and refused to undertake to remedy same or to establish or maintain proper opening for the outlet of surface and other water falling on and flowing over and across the above described lands and that they have caused to be filled up the natural water courses across said lands causing the surface waters and other waters to be deflected from their natural and usual courses and to flow over plaintiff's said lands covering same at places

to a depth of from ten to fifteen feet in sand and totally destroying all of the plaintiff's said above described lands situated in said sections 8 and 17, T. 5 N., R. 6 E., and plaintiff avers that his damages and the cause thereof are not abatable by the expenditure of money or labor or both, but are permanent and that all of his above described lands have therefore now been totally destroyed and he is now entitled to recover in this one action, for the total destruction thereof and that the reasonable fair market value of said lands is $1,000."

That a trial was had in said cause on the 22nd day of December, 1917, and the following judgment entered:

"Now on this 22nd day of December, 1917, the same being one of the judicial days of the regular October, 1917, term of this court, comes on for trial the above entitled cause and by agreement of the parties a jury is waived and the cause is submitted to the court for the final trial and determination and the court having seen the pleadings and heard the evidence and the argument of counsel and being fully advised in the premises doth find that the defendants are liable to the plaintiff as set out in his petition and plaintiff's damages and the cause thereof are not abatable by the expenditure of labor or money but are permanent and that plaintiff's lands described as follows: (Here follows description of lands) have been totally destroyed and the plaintiff is entitled to recover in this action the full value thereof and that defendants are liable to plaintiff in the sum of $300, and costs.

"Wherefore, it is considered, ordered and adjudged by the court that the plaintiff have and recover of and from the defendants the sum of $300, and all costs herein laid out and expended."

The defendant contends that the judgment in that case, being for the full value of said land, is a bar to this action, and that neither the plaintiff in that suit nor his successor in title can maintain any other suit for damages to said land. Counsel states his proposition as follows:

"The judgment rendered in favor of the previous owner, plaintiff's grantor, is res judicata that the damages and the cause thereof were original and permanent, and is conclusive as to any damages subsequently suffered, by plaintiff, and the trial court erred in submitting the cause to the jury, and in admitting certain immaterial evidence, in giving certain instructions to the jury, and in refusing to give defendant's requested instructions."

This proposition and argument thereunder are grouped under specifications of error from 1 to 22. It will be seen that William McDaniel, while still the owner of the fee, had brought suit against the railroad for a permanent injury to the land by overflow alleged to have been caused by the railroad's failure to establish or maintain proper opening through its embankment on which its road was constructed; and further alleged that the damage and cause thereof were permanent, and were not abateable by the expenditure of money or labor or both. After the judgment was obtained in this case, which is above set out, and sometime before the commencement of this suit, William McDaniel sold the premises to the plaintiff, J. M. Bevel, and sometime after Bevel became the owner of the land, a heavy rain occurred, and the land was again overflowed, being the same land that was overflowed prior to the time McDaniel brought his suit in which he alleged that the property was totally destroyed, and that the cause was not abatable by labor or money and asked for a judgment for the value of the land. The question presented under this head is whether Bevel, as successor in title, can maintain this suit for damages to his crop when the same had been finally adjudicated in the case brought by William McDaniel, who recovered the full value of the land according to the judgment entered. This question has been before this court a number of times, and in the case of Chicago, R. I. & P. Ry. Co. v. Davis, 26 Okla. 434, 109 Pac. 214, Justice Williams laid down the following rule:

"Where a wrong is of a permanent nature and continuous, springing from the manner in which the ditch or channel is completed, on account of the diversion of surface water, the land of the abutting proprietor necessarily being injured by such diverted water, such proprietor may treat the act of the railway company as a permanent injury and recover his damages in the consequent depreciation of the value of his property, and in such case the recovery of the damage results in a consent on the part of such proprietor to such manner of maintaining such ditch or channel, concluding both him and any subsequent owner of such land."

This case was followed by this court in the case of City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867, in which Chief Justice Hayes says:

"If the damages (suffered) by plaintiff are permanent, then the measure thereof is the value of the property destroyed, or the depreciation in the value of the property injured. * * *

"If it is permanent, then the injured party may recover in one action all damages he has or may sustain as a result of the negligent construction of the improvements complained of; but if it is not permanent, then he may recover only such damages as he

has sustained up to the time of the institution of his action."

In the case of St. Louis & S. F. Ry. Co. v. Stephenson, 43 Okla. 676, 114 Pac. 387, the court says:

"While the rule is well established that there may be as many successive recoveries as there are successive injuries caused by a permanent structure, when its construction and continuance are not in themselves necessarily injurious, yet, where the pleadings and evidence, as in the instant case, show conclusively that the permanent character of a railroad embankment, and its continuance as originally constructed, necessarily produced the injury to the freehold and caused the depreciation in the value thereof complained of at the time of construction, and that such injury had wholly occurred when plaintiff acquired the land, it must be held that she took it in its then known condition."

Under the foregoing decisions, the court holds that where the suit is for the total destruction of the property, and the judgment is rendered for the full value of the property, and said judgment is satisfied by payment thereof to the plaintiff, such judgment is a bar to any further action for damages to the same land. The rule announced in the foregoing case is sustained by the cases of Hubbard v. Spring River Power Company (Kan.) 131 Pac. 1183; Vanderslice v. Irondale Electric Light, Heat & Power Co., 232 Pa. 435; Chicago, Burlington & Quincy Ry. Co. v. Schaffer, 124 Ill. 112; Rosamond v. Carroll County et al. (Miss.) 57 South. 979; Watts v. Norfolk & Western Ry. Co. (Va.) 23 L. R. A. 674; Aldworth v. City of Lynn (Mass.) 10 L. R. A. 210; Ridley v. Seaboard & Roanoke Ry. Co., 118 N. C. 996, 24 S. E. 730; Cattelo v. Chicago, B. & Q. R. Co. (Ill.) 131 N. E. 591; Clark v. Lanier (Ga.) 30 S. E. 741; Bizer v. A. H. & P. Co. (Iowa) 30 N. W. 172; City of North Vernon v. Voegler (Ind.) 2 N. E. 821; Marshall v. Wichita & M. V. R. Co. et al. (Kan.) 152 Pac. 634; Strange v. Cleveland C. C. & St. L. Ry. Co. (Ill.) 91 N. E. 1036; St. L., I. M. & S. Ry. Co. v. Brundidge et al. (Ark.) 171 S. W. 860; Crosby v. City of East Orange (N. J.) 103 Atl. 859; Chesapeake & O. Ry. Co. v. Blankenship (Ky.) 164 S. W. 943; Thompson v. Illinois Central R. Co. (Iowa) 179 N. W. 191; St. Louis, I. M. & S. Ry. Co. v. Anderson, 62 Ark. 365, 35 S. W 791.

In the case of Hubbard v. Spring River Power Co., supra, the Supreme Court of Kansas announced the rule as follows:

"Where lands are subject to overflow by reason of the erection and maintenance of a dam permanent in character, the owner who has not been compensated for the appropriation of his lands may, if he sees fit, maintain an action to recover all damages occasioned to the lands present and prospective, and such cause of action accrues at the time of the appropriation. The owner of lands adjacent to a dam erected as a permanent structure sued to recover damages to the lands by reason of their being subject to overflow. The answer set up the record and proceedings in a former action between the same parties, wherein the plaintiff recovered damages to the land caused by the erection and maintenance of the dam. Held, that the facts pleaded constitute a good defense of res judicata, and that a demurrer to the answer was rightly overruled."

In 22 Ruling Case Law, sec. 144, page 899, the rule is laid down thus:

"Where the injury results from a cause which is either permanent in its character, or is treated as permanent by the parties, all the damages, whether past, present, or prospective may and should be recovered in a single action, and the judgment in one such action is a bar to another like action between the same parties for the same cause.

"If a private nuisance is of such a character that its continuance is necessarily an injury, and it is of a permanent character, that will continue without change from any cause but human labor, and dependent for change on no contingency of which the law can take notice, then the damages are original, and according to the weight of authority a right of action at once exists to recover the entire damage, past, and future, and one recovery will be a bar to any subsequent action."

In the case of Vanderslice v. Irondale Electric Light, Heat & Power Co., supra, the Supreme Court of Pennsylvania says:

"There is no rule of law which will permit one man to take possession of anothers property, and then force him to accept damages in lieu of his right to recover the possession of it. He cannot compel him to part with his property even for a full price; McCoy v. Danley, 20 Pa. 85. Accordingly, one who has been deprived of the use of his land by the casting of water or other substance upon it may bring successive actions for damages to the use, and thus compel the abatement of the nuisance. He is not bound to assume that the structure which causes the injury will be a permanent one, and therefore, sue for all damages for past and future injury to his land; but he can regard the nuisance as of a transient character, and instead of bringing an action for the whole injury to the value of his property, he may sue for the amount of such injury as he suffers from the continuance of the nuisance; C. B. & Q. R. Co. v. Schaffer, 124 Ill. 112 (16 N. E. Repr. 239). An owner has the right, however, to elect to treat an obstruction in a stream which backs water upon his land, or, as here, a raceway

which casts water upon it, as permanent in character, and guage his recovery accordingly. If he so elects, declares for a permanent injury to his freehold, offers evidence in support of it, has his damages assessed on the basis of a total loss of the land flooded, and receives satisfaction at the hands of the defendant, how can he again recover damages for a continuing injury to the same land, caused by the same dam or raceway, without evidence of aggravation? If he can, then what is the measure of damages? Can he compel the defendant to pay him the market value of his land a second time, or will the recovery be limited to the value of the crops he might have raised upon it since the former action? If the latter, upon what principle should a wrong doer be forced to pay for the use of that for which he has paid the owner full value? If a party for an injury to his property elects to proceed by an action of trespass for its value, he in effect abandons his property to the wrongdoer; so that when judgment is obtained, and satisfaction made, the property is vested in the defendant by relation as of the time of the taking or conversion: 1 Herman on Estoppel, 214. So, also, the doctrine as to realty is that, where the injury is of a permanent character and goes to the entire value of the estate, the whole injury is suffered at once, and no other action can be maintained for the continuance of the injury; 1 Herman on Estoppel, 235. And the rule is the same where the injury to the property resulted from a cause which may not be permanent in its character, if it was treated as permanent by the parties to the action: Hartman v. Incline Plane Co., 11 Pa. Superior Ct. 438. Albertus W. Welliver, the plaintiff's grantor, in his action against the defendant, declared that the water seeping through the banks of the defendant's raceway destroyed his crops, flooded his system of underdrains, and permanently rendered about eight acres of his land unproductive and untillable; that his fields were permanently damaged, rendered boggy, swampy and unfit for cultivation, depriving him of the use of the same for agricultural purposes, etc.

"Welliver offered no proof of loss of his crops, or the cost of restoring his system of underdrains, nor of the cost of draining off the water which was then upon his fields, but he treated the race as a fixture, and the percolation through its banks and the flooding of his land of a nature that would continue for all time to come, and by proving the cost of the prevention of the flooding to exceed the market value of his land he thereby established the market value as the measure of his damages.

"Had the defendant preferred to reconstruct its raceway so as to prevent future percolation rather than to pay damages for a permanent injury to the plaintiff's land, it could have objected to his evidence of the cost of prevention, driven him to proof of the cost of restoration alone and thus limited his recovery to damages which has accrued prior to the trial: Aldworth v. Lynn, 153 Mass. 53 (26 N. E. Repr. 229). In which event the judgment would have been no bar to the present action. But the defendant interposed no objection to the introduction of this evidence, and the plaintiff on the basis on which he staked his claim, viz., a permanent injury to his freehold, was permitted to recover damages for the entire destruction of the beneficial use of all his flooded land. This should, and in our opinion did, end further liability to Welliver: Hartman v. Incline Plane Co., 11 Pa. Superior Ct. 438; and Vanderslice, his grantee, cannot be heard to say that he received no compensation for future injuries. He took the land burdened with the seepage from the race.

"In this action the word 'permanent' does not appear in the declaration, and the proof went to the loss of the crops or injury to the use and occupation of the same land since the former trial. No change was shown in the condition of the raceway, nor increase in the seepage therefrom; and, while the water had risen a little higher on plaintiff's land, no more of it was flooded. We are accordingly of the opinion that the defendant's second point ought to have been affirmed, and the plaintiff should not have been permitted to recover compensatory damages, because his predecessor in title elected to treat the seepage as permanent in character and had already recovered at the hands of the defendant all compensation for past and future injuries to his flooded lands. It follows that exemplary damages should not have been allowed, for the defendant had done the plaintiff no wrong."

The case of C. B. & Q. Ry. Co. v. Schaffer, supra, cited in the Pennsylvania Case, just quoted, is a strong case and supports that case in every particular and we would quote from it but we must abridge our quotations.

The above citations and rule quoted from a number of the decisions is sufficient to establish the rule in this class of cases. Counsel for defendant in error contends that the question involved in this action was not decided in the former suit and that it was not former adjudication. He has taken up the cases cited by plaintiff in error and commented on them, and cites a number of cases in which he thinks a distinction is made between the rule laid down in the cases cited by plaintiff in error, and among the cases he cited, we refer to the following cases: Platt v. Ratcliff, 10 Okla. 168, 61 Pac. 523; Keith v. City of Pa., 125 Pa. 575; Case v. Hoffman (Wis.) 72 N. W. 390; Water Commissioners of City of Brunswick v. Cramer (N. J.) 39 Atl. 671; Freeman v. McAninch (Tex.) 24 S. W. 922; Faires v. McLellan (Tex.) 24 S. W. 365. The trouble with the contention of counsel for defend-

ant in error is the petition and the judgment in the former case. There can be no question from a reading of the petition and the judgment of the court in the former case, but that the issue in that case was for the full value of the property. The plaintiff alleges in his petition that the land has been totally destroyed by the overflow, and that the cause is not abatable by the expenditure of labor or money, and that he is entitled to recover the full value of his land. The court finds, in its judgment, that the land described in the judgment is totally destroyed and rendered uesless, and that plaintiff, William McDaniel, was entitled to recover the full value of the lands and must take judgment accordingly. So there can be no question about what was involved in that case. That judgment was never appealed from or set aside and was paid by the defendant in full. Counsel says in his brief:

"The court will bear in mind that the amount of land described in the petition and the judgment is 160 acres, and in that case the court found that the land was totally destroyed and that the value of the 160 acres of land was $300—remarkable, inconsistent, unnatural, inequitable, unjudicious, a fallacy and fraud upon Bill McDaniel—and going out of the record we do not hesitate to say that we do not believe that to this day Wm. McDaniel in that suit had knowledge of, or has yet knowledge of what that judgment purports to determine"

—because, he said, that within 12 months from the date of the rendition of that judgment McDaniel sold the land to plaintiff Bevel for $7,300. That might be good argument, if counsel was attacking the judgment for fraud or mistake, but no action has ever been brought to set aside that judgment upon any grounds, and the same stands as a finality, and has been satisfied, and however which one may think that the plaintiff in that case did not know what the judgment contained, it was the duty of plaintiff to know and it was the duty of his counsel to know and advise him just what the judgment was. It is too late now to complain of the judgment rendered in that case, and it is noticeable from the record, that the same judge who rendered the judgment in the McDaniel Case on the 22nd day of December, 1917, also rendered the judgment in this case. It will be observed from a comparison of the description of the land in each case, that the same is identical. So we have the same subject-matter, the same claim for injury. The only difference being in the name of the parties plaintiff, but the authorities above cited hold that the successor in title stands in the same position as his grantor. He has no greater or less right than his grantor. If his grantor

is barred by the former judgment, he took the land with that burden on it and must stand the consequences. We are of the opinion that the former case is a complete bar to this action; that the judgment in the former case is res judicata herein, and that the judgment of the trial court should be reversed and the case remanded, with directions to dismiss the same. There are other errors assigned and argued but under our view of the case they need not be passed on. Let the case be reversed, with direction to dismiss the case.

By the Court: It is so ordered.