## Hoffman v. Mill Creek Coal Company.

*Trespass—Damages—Single action.*

Where injury is caused by trespass on another's land, since the trespasser cannot remedy the wrong without another trespass, the injury is to be treated as inflicted once for all, and full compensation is to be recovered in one action.

*Mines and mining—Deposit of coal dirt—Measure of damages.*

Where coal dirt is wrongfully deposited upon the land of another the

measure of damages is the cost of removing the deposits and putting the premises in as good condition as they were before, if that can be done, and compensation for the total or partial loss of the use and enjoyment of the premises in the mean time.

If, however, the costs of removing the deposits and restoring the land to its former condition will be greater than the injury from them, if allowed to remain, then the true measure of damages will be the difference between the market value of the land before and after the coal dirt was deposited. Before the latter measure of damages may be invoked it is incumbent on the person injured to give evidence from which a jury may conclude with some degree of certainty that the former measure will not fully compensate him for his injuries.

In such a case to show that the soil was unfit for cultivation after plaintiff had ploughed under the culm is not sufficient to entitle him to recover the difference in value upon the theory that the injury was permanent, unless he also shows that the cost of removing it would have been greater than this difference, or unless by reason of the quantity of the deposit, the jury would have been justified in inferring this latter fact without further proof.

Argued Dec. 4, 1900.    Appeal, No. 203, Oct. T., 1899, by defendant, from judgment of C. P. Schuylkill Co., March T., 1893, No. 171, on verdict for plaintiff in case of William Hoffman v. The Mill Creek Coal Company.    Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass for injuries to land caused by deposits of coal dirt. Before LYONS, P. J., specially presiding.

At the trial under objection and exception, the court permitted various witnesses to testify as to the difference between the market value of the property as unaffected and as affected by coal dirt deposited in a creek adjoining the property. [7–12]

The court charged in part as follows :

[So that your inquiry would be, in the first place, are the injuries to the plaintiff permanent?    If they are, then the measure of damages which the plaintiff would be entitled to, would be the difference between the value of his property before it was injured, as complained of, and the value of the property now. You will refer to the evidence in relation to that and give it such weight as you think it is entitled to.] [1]

[You will consider the whole evidence in the case and find

first, whether the injuries were permanent; then, as we said before, you will ascertain what the market value of the property was before the injury was inflicted upon it, and what it has been since, by reason of the injury inflicted upon it.] [2]

[If there is no more coal dirt deposited in the stream, will the water wash it out, as the evidence shows it has been doing, in a short time, and free the bed of the stream from it in such a way that no permanent injury will be inflicted upon the plaintiff's property? If so, he cannot recover for permanent damages.] [3]

[It does not matter how long ago this coal dirt was placed upon the banks of the stream, if it found its way down. If it was negligently placed where the storms and floods would carry it into the streams, if it only found its way down in the vicinity of the plaintiff's land within seven years of the bringing of this suit, the statute would not be a bar; all would be liable who had placed the dirt there, even long ago, and if it ultimately found its way into the stream, and then to the plaintiff's, within seven years before the bringing of this suit. That is a question which you will take into consideration, where the dirt came from, how much each contributed towards it, how much the damages sustained by the plaintiff were, and then ascertain how much of it, if any, this defendant should pay.] [4]

Plaintiff presented this point:

4. If the jury find that the defendant has negligently deposited culm, coal, muck or coal dirt in the bed of the Mill creek, or at a point where it escaped into the Mill creek or into any of the tributaries of Mill creek, and that the same was carried down the stream and filled up the Mill creek adjacent to the property of the plaintiff in this case, and thereby caused the creek to overflow its banks and deposit culm, muck or dirt upon property of the said plaintiff, the said defendant is liable for any damages thus occasioned by them to said plaintiff. *Answer:* Affirmed. [5]

Defendant presented this point:

1. The measure of damages under the evidence in this case is not the difference in the market value as affected and unaffected by the coal dirt in the creek, but the cost of restoring the property itself to the condition it was in prior to the alleged in-

jury.   *Answer:* Refused for the reason stated to you in the general charge.   [6]

Verdict and judgment for plaintiff for $135.   Defendant appealed.

*Errors assigned* were (1-6) above instructions, quoting them. (7-12) Ruling on evidence, quoting the bill of exceptions.

*Frederick Bertolette* and *Guy E. Farquhar*, for appellant.— It was error to permit a recovery on the theory that there was a permanent injury: 1 Sedgwick on Damages, secs. 93, 129; Bare v. Hoffman, 79 Pa. 77; Robb v. Carnegie Bros. & Co., 145 Pa. 324; Lentz v. Carnegie Bros. & Co., 154 Pa. 612; Eshleman v. Martic Twp., 152 Pa. 68; Elder v. Lykens Valley Coal Co., 157 Pa. 490; Gift v. Reading, 3 Pa. Superior Ct. 359.

Not only is this the law of Pennsylvania, but it has been held elsewhere in cases of nuisance that the amount of depreciation in market or selling value of premises, which depreciation is caused by the maintenance of a nuisance in the vicinity, is not the measure of damages for maintaining such nusiance: N. K. Fairbank Co. v. Nicolai, 167 Ill. 242; 47 N. E. Repr. 360; Aldworth v. City of Lynn, 153 Mass. 53; Prentiss v. Wood, 132 Mass. 486; Wells v. New Haven & Northampton Co., 151 Mass. 46.

*C. E. Breckons*, with him *E. A. Beddall*, for appellee, cited Seely v. Alden, 61 Pa. 302.

OPINION BY RICE, P. J., April 16, 1901:

On or near the banks of Mill creek are several collieries and washeries, and amongst them one operated by the defendant company.   On the trial of this case evidence was given which tended to show, that in conducting its business the defendant deposited culm and coal dirt upon its premises in such a way that naturally, and as was to be expected, it was carried into the stream and thence down the same, until it, in connection with similar deposits brought from other collieries, raised the bed of the stream at or near the plaintiff's premises from two to four feet, according to the varying testimony of the witnesses.

The plaintiff claims to be the owner of three contiguous lots, upon each of which there is a dwelling house.   To part of this land he showed title by deed, and to the easternmost lot, the one nearest the creek, he claimed title by adverse possession. It is argued that his title by possession extended to the middle of the stream, but this contention is not sustained by his testimony.   For a part of the distance the lot of H. E. Paul lies between his lot and the creek, and for the remainder of the distance a stone wall separates his lot from the creek.   He testified unequivocally that his claim and possession eastwardly extended to the Paul lot and the stone wall, and there is no evidence that they extended further so as to embrace any part of the bed of the creek.

The plaintiff showed that in the freshets which occurred in January and February, 1893, the stream overflowed its banks and deposited in his cellars and on the surface of his lots considerable quantities of culm and coal dirt.

He also claims that since 1890, or thereabout, his cellars have been damp, and at times have had water in them, and he asked the jury to infer from other testimony given by him and his witnesses that these latter conditions were caused by the raising of the bed of the stream ; in other words, that, as a result of the deposit of coal dirt, the stream is, in ordinary high water, above the level of his cellars, and that when it is raised by rains the water soaks through the soil into his cellars.   The evidence adduced in support of this latter claim is not as clear and satisfactory as might have been furnished if the fact be as he claims.   We cannot say, however, that it was not sufficient to carry the question to the jury, and in our consideration of the questions of law raised by the assignments of error we shall assume that their verdict has established the fact that the conditions last described were caused directly or indirectly by the raising of the bed of the stream, and that they will continue or recur as long as the bed of the stream remains at the same level.

We shall consider first and separately the plaintiff's injury caused by the washing of culm and coal dirt upon his land in the freshets of 1893, because there is a distinction between a direct trespass and a consequential injury resulting from something done or maintained off the plaintiff's land which may or

may not continue. The general doctrine is, that where injury is caused by trespass on the plaintiff's land, since the defendant cannot remedy the wrong without another trespass, the injury is to be treated as inflicted once for all and full compensation is to be recovered in one action : 1 Sedg. on Damages, sec. 92, p. 128. But it does not necessarily follow that the measure of damages for the injury caused in 1893 was the difference between the market value of the lots before the coal dirt was deposited on them and their market value as affected by that deposit if allowed to remain. Prima facie the measure of damages would be the cost of removing the deposits and putting the premises in as good condition as they were before, if that could be done, and compensation for the total or partial loss of the use and enjoyment of the premises in the mean time. If, however, the cost of removing the deposits and restoring the land to its former condition would be greater than the injury from them, if allowed to remain, then the true measure of damages would be the difference in value merely. This is the doctrine of Seely v. Alden, 61 Pa. 302. But before invoking the application of the latter measure of damages we think it was incumbent on the plaintiff to give evidence from which a jury might conclude with some degree of certainty that the former measure would not fully compensate him for his injury, and in this particular there is a failure of proof. To show that the soil was unfit for cultivation, after he had plowed under the culm, was not sufficient to entitle him to recover the difference in value upon the theory that the injury was permanent, unless he also showed that the cost of removing it would have been greater than this difference, or unless, by reason of the quantity of the deposit, the jury would have been justified in inferring this latter fact without further proof.

Several witnesses were asked and were permitted to answer this question: " What is the difference in the market value of the Hoffman property as unaffected by the coal dirt in Mill creek and as affected by it ? " In his instructions to the jury upon this branch of the case—namely the injury to the plaintiff's property from the deposits in the creek—the learned judge who presided at the trial said: " In the first place what you should inquire is, and we submit it as a question of fact for you to determine, whether this property has been permanently in-

jured or not? Did the filling up of the bed of that stream, and it is not contradicted that it was filled up, inflict a permanent injury upon the plaintiff's land?" Further on he said: "If there is no more coal dirt deposited in the stream will the water wash it out, as the evidence shows it has been doing, in a short time, and free the bed of the stream from it in such a way that no permanent injury will be inflicted upon the plaintiff's property? If so he cannot recover for permanent damages." Finally upon this subject he said: "So that your inquiry would be in the first place, are the injuries to the plaintiff permanent? If they are, then the measure of damages which the plaintiff would be entitled to would be the difference between the value of his property before it was injured, as complained of, and the value of the property now." It is thus seen that the jury were permitted to assess the plaintiff's damages upon the theory, if they deemed the evidence sufficient to warrant that theory, that the bed of the stream will always remain in the same condition, and that in consequence water will continue to percolate through the soil into the plaintiff's cellars, and when there is an extraordinary flood, as there was in 1893, the stream will overflow its banks and carry upon the plaintiff's premises culm, coal dirt and other refuse. It is argued that the submission of the case to the jury in this manner was warranted by the case of Seely v. Alden, supra. But there are several material points in which this case differs from Seely v. Alden, and a statement of them will sufficiently show why it was not proper to permit the jury in the present case to assess the damages upon the theory above suggested. In Seely v. Alden the action was for casting tanbark into a stream so that naturally, and as was to be expected, a part was carried into the plaintiff's pool. In the present case the culm lodged in the bed of the stream is not upon the plaintiff's land. In the former case the injury was direct and immediate; in the latter case it was consequential. It results from something done off the plaintiff's land and may or may not continue. If the defendant and others responsible for it see fit to abate the nuisance—which they can do without trespassing upon the plaintiff's land—the injury will cease, but the plaintiff may sustain successive actions for successive damages which in the mean time may be done to his property. The distinction we have referred to is not a mere fanciful one, but has

been recognized in many well considered cases and in the text books, amongst which may be mentioned Bare v. Hoffman, 79 Pa. 71, Robb v. Carnegie Bros. & Co., 145 Pa. 324, and Gift v. Reading, 3 Pa. Superior Ct. 359. See also Lentz v. Carnegie Bros. & Co., 154 Pa. 612, Eshleman v. Martic Township, 152 Pa. 68, Gould on Waters (2d ed.), sec. 420, and 1 Sedg. on Damages, sec. 93.

In Bare v. Hoffman, Mr. Justice MERCUR said: " The whole damage of which the defendant in error complained was caused by Bare's placing a pipe in the stream on his own land. A severance of the connection of the pipe with the stream would cause the water to run in its accustomed channel; and remove the whole cause of complaint. It is not the case of an entry on the land of the defendant in error, and a severance of any part of his freehold; nor of depositing a permanent nuisance thereon, as in Seeley v. Alden, 11 P. F. Smith, 302. Bare neither took anything off from Hoffman's land, nor deposited anything thereon. The act he committed was not of such a permanent character as to assume it to continue through all coming time, and to justify the assessment of damages accordingly." So in a Massachusetts case where the action was for injuries alleged to have resulted to the plaintiff's land from a negligent construction and maintenance of a dam and reservoir on the defendant's land it was held that only the damages which had accrued prior to the commencement of the action could be recovered. The court said: " The defendant may prefer to change his use of his property so far as to make his conduct lawful. In the present case we cannot say that the defendant may not repair or reconstruct its dam and reservoir in such a way as to prevent percolation, with much less expenditure than would be required to pay damages for a permanent injury to the plaintiff's land : " Aldworth v. City of Lynn, 153 Mass. 53. This doctrine was recognized in Hartman v. Pittsburg Incline Plane Co., 11 Pa. Superior Ct. 438. In Gift v. Reading, supra, where the action was for consequential injuries caused by the negligent construction of a sewer, our Brother SMITH said : " None of the plaintiff's real estate was taken for any public use by the defendant. The property was not wholly destroyed, or irreparably injured. It appears that the plaintiff and her family continued to reside in the house notwithstand-

ing the floods, and, with the exception of the cellar, used it as before the diversion of the water. If, therefore, the defendant is liable at all, it is for such injuries only as were done to the property, and the measure of compensation would be the cost of repairing the damages and thus restoring the property to its former condition, unless such cost would equal or exceed the value of the building, in which case the value of the building would be the measure of the plaintiff's damages." Another point of distinction between this case and Seely v. Alden is that, according to evidence given by the plaintiff's own witnesses, there is no certainty, or even extreme probability that the bed of the creek at or near the plaintiff's premises will always remain at the same level if no more culm is deposited in the stream, and of course the jury had no right to assume that more will be deposited. Extraordinary floods may bring down more culm already deposited farther up the stream, or may carry away those deposits which lie in the bed of the stream at or near the plaintiff's premises. What will be the condition of the bed of the stream at that point five years from now must necessarily be almost entirely a matter of conjecture. Since 1893 it has been lowered from eighteen inches to two feet, according to the testimony of some of the plaintiff's witnesses, and at one point, not remote, the culm has been entirely swept away. We are not to be understood as deciding that under no state of facts can a plaintiff recover for his whole loss, past as well as prospective, when the cause of his injury is a continuing nuisance maintained by the defendant upon his own land or on the land of a third person. But it is to be borne in mind that the law will not presume a permanent injury, and that in such a case it is incumbent on the plaintiff, who seeks to have his damages assessed upon that theory, to aver and prove that the act complained of necessarily causes a permanent injury to the value of his property, or, according to the more liberal doctrine of some of the cases, that the injurious conditions are reasonably certain to be permanent. After a very thorough examination of the evidence, we think it fails to come up to either standard, not merely because there is no certainty that the defendant and others responsible for it will not abate the nuisance, but more especially because there is no certainty that, even without action on their part, the injurious conditions of

which the plaintiff complains will continue permanently. Therefore the assignments of error specifying rulings upon evidence, and instructions as to the permanency of the injury and the measure of damages, so far as inconsistent with the foregoing conclusions, are sustained.

The instruction that the bar of the statute of limitations would not prevent recovery for anything done within "seven" years prior to suit brought, was an inadvertence which doubtless would have been corrected at once if the attention of the learned judge had been called to it. We cannot see that it harmed the defendant, for by all the plaintiff's testimony the injury did not have its inception until about 1890, and the suit was brought in 1893.

For reasons suggested at the outset of this opinion, the deed from John A. Riley and others to Joseph Thomas (thirteenth assignment) was irrelevant, and its admission erroneous. The plaintiff did not claim title to the whole of the lot described in the deed. This assignment is sustained.

The judgment is reversed and a venire facias de novo awarded.