# Bigham, Appellant, *v.* Pittsburg Construction Company.

*Railroads—Injuries to land outside of right of way—Damages—Trespass.*

Where a railroad company deposits large quantities of earth, rock and waste matter, brought from other portions of its right of way, upon land beyond the line of the slope or embankment contemplated by the owner's grant to the railroad company, the owner may maintain an action of trespass, and in this action elect to treat the injury as permanent in its nature, and to ask that his entire damages be assessed accordingly. In such a case in the absence of sufficient and competent evidence relative to the depreciation in value as a measure of damages, the jury should be instructed, that, subject to their finding as to the relation of the part occupied by the deposit to the rest of the lot, the cost of removing the material wrongfully deposited on the plaintiff's land, and putting it in as good condition as if the railroad company's rights as to the slope had not been exceeded, would be the proper measure of damages, provided such cost would not be greater than the value of the land injuriously affected, and in the latter case the value of such land would be the measure.

A landowner granted to a railroad company a right of way upon a hillside with the privilege of extending a slope a certain distance for the support

of the road.  Subsequently the grade of the road was changed, and a new agreement was made to conform to the changed grade with the necessary slope.  The railroad company in constructing its road deposited large quantities of earth, rock and waste matter beyond the lines contemplated by the grant.  The landowner brought an action of trespass against the company for the injury.  *Held*, that the plaintiff was entitled to show what deposits were made before the change of grade, and that the deposit complained of was not made in the execution of the grade contemplated when the original grant was made.

Argued April 10, 1905.  Appeal, No. 109, April T., 1905, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1902, No. 775, on verdict for plaintiff in case of Kirk Q. Bigham, executor and trustee of Maria L. Bigham, deceased, v. The Pittsburg Construction Company and The West Side Belt Railroad Company.  Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.  Reversed.

Trespass to recover damages for injuries to land.  Before BROWN, J.

The facts appear by the opinion of the Superior Court, and by the charge of the court below.

At the trial William Barum, a witness for the plaintiff, being on the stand, testified :

" Q. You worked on the railroad ?  A. Yes, sir.  Q. Do you know when work was commenced ; when the grade was commenced on the Maria L. Bigham property ? "

Objected to by the defense as not rebuttal.

The Court: I don't think it makes very much difference when it was begun or finished.

Plaintiff's counsel propose to prove that the grading complained of in this action was done by the defendant after August, 1901, and after the present grade of the railroad had been established.

Objected to by the defense as incompetent and irrelevant.

The Court: The objection is sustained and exception noted to the plaintiff. [7]

The court charged in part as follows :

For the purpose of this case the railroad company in the first place had a deed made in 1899 covering the first right of

way, upon which the first construction work was done to the extent of about seventy per cent, as some of the testimony shows.  To the extent of whatever work was done under that first deed, based upon the grade under that deed, which was the higher grade originally, to the extent that the work was done under that deed, within the limits of the right of way, and within the limits of the slope lines which the company had a right to use under that right of way, to that extent, of course, the construction company would not be a trespasser. The new grade was established in 1901, based upon a new deed, and to the extent that any filling was made by it up to the time that grade was changed, it was a lawful placing of earth, provided it was in the territory covered by the deed, viz.: " The road at grade with the necessary slopes." After the change in grade, whatever deposit was made upon this property, under the new deed, would have to be a deposit within the lines granted by that new deed, which would be the right of way at the grade, with the necessary slopes.

Keeping those points in view, then, you come to the sole question in this case, namely, whether there was a trespass in the construction of this work upon the Bigham property by the construction company.  That is, did it make a deposit at any time outside of the limits of the grant, and beyond the right of way lines ?  If it did, then to the extent that it went beyond those lines over into territory or property of the Big- ham estate, which it had no right to enter upon, to that ex- tent it was a trespasser and would have to pay in damages.

The law expects that when one party has been injured by another by a trespass or by negligence that the injured party shall be compensated.  In the absence of something which would show that the injury was the result of malice or reck- lessness—and there is no evidence whatever in this case show- ing anything of that sort—the injury is to be measured and the amount of verdict fixed by the actual injury.  It is to be measured by what is termed honest compensation.  In other words, the man who, without malice or recklessness, commits a trespass—he may commit it innocently, or he may do it un- certain as to whether he is right—he may think he has the right to go upon the territory, but whether he did it innocently or not, if it turns out it was a trespass, then to the extent of

the damage he must make compensation and pay in dollars and cents.

Compensation means the value of the injury measured in money. It does not mean punishment, or two, three, four or five prices for the injury. It means the value of the actual injury, measured by what is termed a fair rule of compensation, to make the owner whole. That brings you down, then, to the question in this case :

[As there is not a shadow of testimony that the trespass, if there was a trespass has resulted in the total destruction of the whole property, of which the trespassed portion is a part, or of its market value, what is the measure of damages in estimating the amount of the plaintiff's loss? . The cost of removing the deposit and restoring the land to its former condition is the measure of damages, unless the cost of such removal and restoration would be greater than the injury, in which case the true measure of damages would be the difference between the market value of the property without the deposit and its value as affected by the deposit. In other words, if the depreciation in the value of the land, as affected by the deposit, the whole land, not merely the piece upon which the deposit was made—but if the depreciation of the market value of the land as affected by the deposit is less than the cost of removing it, the depreciation in the market value is the measure of damages.] [3]   Hoffman v. Coal Co., 16 Pa. Superior Ct. 631; Seely v. Alden, 61 Pa. 302; Stevenson v. Coal Co., 203 Pa. 316.

That is the rule as applicable to this case, as laid down by RICE, P. J., of our Superior Court in Hoffman v. Coal Co., 16 Pa. Superior Ct. 631, and we understand it to be the rule as laid down by the Supreme Court in Stevenson v. Coal Co., 203 Pa. 316.

Of course there is the general rule that, in the first place, the measure of compensation is the cost of removal. We start out with that rule, and there is the general rule that where there is a permanent injury and a total destruction of the property, of the value of the property as a whole, in that case while the cost of removal might exceed the value of the property, the owner cannot recover more than the actual value of his property. Where the property is not totally destroyed,

where the market value as a whole is not totally destroyed, but only partially, and where the depreciation in the value is less than the cost of removing the stuff and restoring the property, then the difference in the market value is the measure of compensation. That is, whatever will make the owner of the property whole in the market, if he were selling his property, whatever will make him whole is the measure of compensation.

By way of illustration: Suppose that a given tract of land contained an acre, and it was injured to the extent of a quarter. That is, suppose the rear quarter of that acre, by the negligence of the contractor in blasting the hillside, or in some other way, had deposited 2,000 or 3,000 cubic yards of material —or, if it had not been deposited by the negligence of the contractor, but innocently, or by some mistake, was the result of a trespass, in no event could the damage exceed the value of that property. If an acre was worth $100 to the owner, in the market, before the injury was done to him, he could in no event recover more than $100. If the cost of removal was less than the real injury to the property, then the cost of the removal would be the measure of damages. If some 2,000 or 3,000 cubic yards of material had been deposited on the acre, and the acre was worth $100, and if the cost of removing that material was, say twenty cents a cubic yard, 2,000 cubic yards would be $400, and 3,000 cubic yards would be $600. Under no possible rule could the owner recover these amounts, because he would be recovering four or five times the value of the property if it was totally destroyed.

[Coming back to this rule in relation to the illustration of the acre worth $100: If this deposit upon the property did not affect the market value of the property to the extent of the full value, but only to a partial extent, then the difference between the market value of the property before there was any deposit upon it, and its value as affected by the deposit, would be the measure of damages. That is, it might have a deposit upon it which would cost $2,000 to remove, or $1,000, or some other number of dollars, while the cost of removing that stuff might run into hundreds of dollars, yet if the property as a whole was only worth $100 in the first place, and would still sell in the market for $75.00, the owner is only out $25.00 in

the market value of the property, and we charge you that that is the rule on this question of depreciation in value.] [4]

To determine which of these measures of damage you will apply you will first inquire as to the cost of removing the deposit and restoring the premises to their former condition. How many cubic yards of material would have to be removed, and what would be the fair price per cubic yard. The prices range from twenty-two cents to some seventy or eighty cents, but, notwithstanding this range of prices, Mr. Werneberg testified that twenty-two cents is a reasonable price and he offers to send a written proposition to Mr. Bigham to remove the material at that figure, he finding the dump. If the number of cubic yards to be removed, by way of illustration, and as claimed by the plaintiff, amounts to 1,800, that, counted at twenty-two cents a cubic yard, would be about $396. Of course, the quantity to be removed, if there was a trespass, whether it was 1,800 yards, or less or more, not exceeding 1,800, whatever the quantity was, in the sense that it was a quantity within a trespassed territory, to that extent the cost of removal would be the number of yards multiplied by whatever the jury think, or whatever the testimony shows, would be a fair price per yard.

When you have settled the cost of removing the material, say it was $396, or say it was $200 or $500, or whatever you think would be a fair price, when you have fixed the price of the cost, under fair conditions, at the nearest point or some other point, to put that stuff, and remove it and restore the ground, then you have the first measure of damages. The courts say that that is the measure and that that is the full amount that the owner is entitled to, unless the injury to the property, to the market value of the property, is less than that sum. [In other words, if the cost of removal would be more than the real injury to that property as a whole, measured in dollars, in the market value, then the depreciation in the market value would be the measure of damages.] [5]

Now, coming to this second rule: Is the depreciation in the market value of this property less than the cost of removing the earth within the trespassed territory? Is the depreciation less than that? If it is, then the depreciation is the measure of damages. The range of values as testified by numerous

witnesses, runs from about $1.00 a front foot up to $12.00.
Mr. Soffel, a right of way agent for the railroad company,
familiar with values, testifies that he purchased a number of
properties in that vicinity, and that his estimate of $1.00 a foot
for that property—which would be about $300 for the whole
property—is based upon those values. He says that he pur-
chased for the railroad company, just adjoining this property
on Woodville avenue, or very close there, from the Third Na-
tional Bank, eight lots. He purchased a larger number of lots,
but eight of them were upon Woodville avenue, and I think
he said that the price for the eight lots, twenty-five feet front-
age each, the total price for that 200 feet was $200, and he
says that is the basis of the value of this Bigham property at
$1.00 a foot front. There were some other parties who per-
haps fixed values down at that same price, naming about $300
an acre.

On the other hand, the owner of the property, through a
number of witnesses, fixes the price at from $10.00 to $12.00 a
foot front. While there is a lot of testimony as to the value
of this property, ranging from about $1.00 a foot front up to
$10.00 or $12.00, but not so far, as I recollect it—and it is for
you to correct the court and to be guided by whatever the tes-
timony is—the only testimony that would tend to show a de-
preciation in the value of the property measured in dollars and
cents is the testimony of Mr. Sanders. Mr. Sanders for a
number of years was in the treasurer's office of the city of
Pittsburg, but no matter where he was, he appears to be a
good witness and a nice gentleman, and he has known this
property for a great many years. He says the property is worth
from $10.00 to $12.00 a foot front, the same as the other wit-
nesses. None of the other witnesses testified as to how much
the property has been depreciated in value by reason of this
alleged trespass.

[Mr. Sanders, however, puts it in this way: He says that his
value of $10.00 to $12.00 a foot front on that 300 feet of frontage
would run from $3,000 to $3,600, and that is the value of the
entire property running from Woodville avenue up to the
grade line of the railroad, taking in the slope and the ground
outside of the slope. He testifies that that estimate is based
upon the assumption that he could get title or get possession

of all this property from Woodville avenue clear up to the grade line of the railroad; but if he could not get that far, if he could not take in the slope or fill that you saw upon the ground, if he could not use that, then he testifies he would make a difference of $2.00 a foot. Now it is for you to say where the weight of evidence carries you on the question of value, but he is a witness introduced by the plaintiff. You are asked to accept his testimony as testimony worthy of credence. You will weigh it in connection with all the other testimony; but if his testimony is true, that the property without the slope, without the filled hillside there, is worth $2.00 less, then it seems to me it necessarily follows that all of the slope property is worth $2.00 a foot front. I do not know whether I make myself clear on that. If the whole property from Woodville avenue up to the grade of the railroad, up to the top of the slope, was worth $10.00 to $12.00 a foot front, and without the entire slope it would be worth $2.00 less, then the whole slope property would be worth $2.00 a foot, according to his testimony. As it has a range of about 300 feet, according to his testimony, the value of the whole property and the entire slope along there would be about $600.] [6]

Plaintiff presented these points :

1. The right of the defendants to occupy and use plaintiff's land under the deed of 1899 is fixed and limited as follows : Defendants had a right of way on the line in deed located thirty feet in width, with the right to make a slope extending one and one-half feet from the right of way for each one foot in height of the slope, provided the same was necessary for the maintenance of defendants' roadbed. [Under that deed defendants had the right to construct their roadbed at such grade as they deemed proper, but this deed gave them no right to construct a road at any other point than the right of way fixed by the deed, and gave no right to fill any materials elsewhere than along the said right of way.] *Answer :* Affirmed except as to the part in brackets—the undisputed evidence being that the grade contemplated by the deed, and so understood by the parties to it—was a fixed grade referred to in the testimony. [1]

7. The measure of damages in this case is the cost of removing any material dumped or filled on plaintiff's land in excess

of the amount authorized by plaintiff's grants to the railroad company, and the cost of putting plaintiff's land in the condition required by said grants, provided such cost is not greater than the value of the land affected; and in the latter case, the value of the land is the measure of damages. See Stevenson v. Ebervale Coal Co., 201 Pa. 121. *Answer :* Refused. [2]

Verdict and judgment for plaintiff for $25.00. Plaintiff appealed.

*Errors assigned* were (1–6) above instructions, quoting them; (7) ruling on evidence, quoting the bill of exceptions.

*R. B. Petty*, for appellant, cited: Lentz v. Carnegie, 145 Pa. 612; Eshleman v. Martic Twp., 152 Pa. 68; Lucot v. Rodgers, 159 Pa. 58; Harvey v. Coal Co., 201 Pa. 63; Helbling v. Allegheny Cemetery Co., 201 Pa. 171; Gift v. Reading, 3 Pa. Superior Ct. 359; Standard Plate Glass Co. v. Water Co., 5 Pa. Superior Ct. 563; Hoffman v. Coal Co., 16 Pa. Superior Ct. 631; McCartney v. Philadelphia, 22 Pa. Superior Ct. 257.

*E. W. Smith*, of *Reed, Smith, Shaw & Beal*, for appellee, cited: Seely v. Alden, 61 Pa. 302; Hoffman v. Coal Co., 16 Pa. Superior Ct. 631.

OPINION BY RICE, P. J., October 9, 1905:

The land in question is part of the estate of which the plaintiff is executor and trustee. It has a frontage of 300 feet on Woodville avenue, and a depth at one end of about seventy feet, and at the other of about 170 feet. For varying distances back from the street the land is comparatively flat; for the remainder of its depth it is upon a hillside. The West Side Belt Railroad Company, acquired by grants from the plaintiff a right of way across the lot, nearly parallel with Woodville avenue and of a specified width at the grade of the railroad, together with the privilege of constructing and maintaining for the protection and support of the railroad a slope extending one and one-half feet from the right of way for each one foot in height of the slope. The right of way being along

the hillside, the railroad was constructed in part by cutting
into the hill on one side and dumping the excavated material
on the other side. The work was done by the Pittsburg Con-
struction Company under a contract with the railroad company.
The plaintiff claimed that the construction company deposited
large quantities of earth, rock and waste matter, brought from
other portions of the right of way, upon his land beyond the line
of the slope or embankment contemplated by the grants to the
railroad company. This action of trespass brought by him
against the construction company and the railroad company to
recover damages for the alleged injury resulted in a verdict
and judgment in his favor against the construction company.
Many questions growing out of a change in the location of the
right of way, and of the grade of the railroad, arose on the trial,
but the principal question for decision upon the plaintiff's ap-
peal, which is now before us, is as to the measure of damages;
therefore we have alluded to such facts only as are pertinent
to that question.

It may be stated broadly that the plaintiff contended that
the whole lot was injuriously affected by the deposit of waste
beyond the proper slope line, while the defendant contended
that only that part of it which was actually covered by the de-
posits was so affected. The evidence relative to the location
of the land, its contour and depth, the neighborhood in which
it was situated, the uses to which it had been put and for
which it was available before and after the trespass, and other
matters affecting the relation of the part covered to the re-
mainder of the lot, entitled the parties to have the question
raised by the opposing contentions above alluded to submit-
ted to the jury under appropriate instructions by the court.
We entirely agree with the appellee's counsel that whether or
not the material, deposited where it was, in any way affected
the property on Woodville avenue so as to make the value
of the property, in any contingency, a measure of damages,
was a question of fact for the jury. The determination of this
question has an important bearing upon the question whether
in estimating the damages the cost of removing the deposit is
to be compared with the value or the depreciation in value of
the whole lot, or with the value or the depreciation in value of
the part covered. What we shall have to say relative to the

measure of damages is to be taken subject to the foregoing qualification.

The plaintiff elected, as it is conceded he had a right to under the evidence, to treat the injury as permanent in its nature, and to ask that his entire damages be assessed accordingly: Seely v. Alden, 61 Pa. 302; Duffield v. Rosenzweig, 144 Pa. 520. Prima facie the measure of damages was the cost of removing the waste wrongfully deposited on his land and putting it in as good condition as if the slope had been constructed in accordance with the railroad company's right under the grants. As shown by the plaintiff's seventh point and the defendant's fourth point the former conceded, and the latter contended that if this exceeded the value of the land the latter would be the limit of recovery. They differed in this only that the plaintiff claimed that the comparison should be made with the value of the whole lot while the defendant claimed that it should be made with the value of the part actually covered. The court, however, was not bound to submit the case upon the theory suggested by the points if the evidence warranted its submission upon a different one. The learned judge took the view, and so instructed the jury, that as there was no pretense that the whole property or its market value had been destroyed, the depreciation in the market value of the whole lot, of which the strip encroached upon is a part, would be the measure of damages, if that was less than the cost of removing the deposit. This is the plaintiff's chief subject of complaint. We do not accede to the proposition, to which the argument of the learned counsel for the appellant seems to lead, that under no circumstances would the depreciation in the market value be the proper measure of damages for a permanent trespass of this nature. Of course it is not the measure in the case of a nuisance not permanent as in Bare v. Hoffman, 79 Pa. 71; McCartney v. Philadelphia, 22 Pa. Superior Ct. 257, and similar cases where there is no ground for the presumption that the cause of the injury will not be abated. But in general the rule for the measure of damages for a permanent injury to the land is that which aims at actual compensation. As Justice DEAN said in Stevenson v. Ebervale Coal Co., 203 Pa. 316, what the plaintiff has a right to ask is " that he be made whole; not rich."

And although in the absence of evidence warranting punitive damages, they cannot exceed the value of the land directly or consequentially injured by the act complained of, yet it does not necessarily follow that if that is less than the cost of restoring the land to its former condition the party injured is entitled to recover the full value of the entire tract. Under some circumstances this would be the only just and practical rule that could be applied, while under others it would lead to a recovery grossly in excess of compensation, as is well shown by the illustrations given in his charge by the learned trial judge. It would not be profitable, however, to pursue the discussion of this question further; for although the rule laid down by the learned judge for the guidance of the jury would have been appropriate under some circumstances, we are constrained to the conclusion that it was not appropriate under the evidence submitted by the parties. In chief, the plaintiff gave evidence that about 1,777 cubic yards of waste were deposited on his land outside the line of the slope which the railroad company had a right to construct, and that the cost of removing it would be about $1,300. The defendant answered that the number of yards deposited on the plaintiff's land, for which the defendant would be liable in this action, was much less than the plaintiff claimed, that the cost per cubic yard of removing it would be much less than his witnesses testified to, that the value of the land was about $300 per acre and that the land wrongfully covered did not exceed one-eighth of an acre. In rebuttal the plaintiff adduced evidence that the land was much more valuable than the defendant admitted. Up to this stage of the case neither party had attempted to show the difference between the market value of the land as a whole before the trespass and its value as affected by the deposit of waste beyond the proper line of the base of the slope. The plaintiff was not bound to introduce evidence of that kind in chief, and as the defendant did not introduce it, the plaintiff was not required, and strictly speaking was not entitled, to go into that question in rebuttal. Nor did he attempt to do so. In short, neither party had gone upon the theory in presenting his evidence that in some contingencies the depreciation of the market value of the whole lot would be the measure of damages. But upon cross-examination of one of the plaintiff's

rebutting witnesses, who had testified in his direct examination that the land was worth $12.00 a front foot, the question was asked whether it would make any difference if the railroad company had a right to maintain " the slope there at one and one-half to one, that you can't go up to the line of the railroad." To which he replied: " Well, I think it would make a difference of a couple of dollars a foot there anyhow." How much more difference it would make he did not undertake to say. It will be observed further, that he was not called upon to express an opinion as to the difference in the market value of the land with the proper slope and the slope actually made. His testimony above referred to was vague and indefinite at the best, and was rendered still more so by his answers to subsequent questions. Having regard to the manner in which the case was tried up to that point, to the purpose for which the witness was called and to the indefiniteness of his answer above quoted, we are of opinion that the learned judge fell into error in submitting the case to the jury upon the theory that the depreciation in the market value of the lot was fixed at $2.00 a front foot by a witness to whom the plaintiff gave credence. In the absence of sufficient and competent evidence relative to the depreciation in value as a measure of damages, the jury should have been instructed, that, subject to their finding as to the relation of the part occupied by the deposit to the rest of the lot, the cost of removing the material wrongfully deposited on the plaintiff's land and putting it in as good condition as if the railroad company's rights as to the slope had not been exceeded would be the proper measure of damages, provided such cost would not be greater than the value of the land injuriously affected, and in the latter case the value of such land would be the measure. This is all we deem it necessary to say regarding the second, fourth, fifth and sixth assignments of error which relate to the measure of damages.

The only other assignments that need be discussed are the first and seventh. The deed of 1899, for the right of way then granted said nothing as to the grade except that the right of way granted was thirty feet in width " at the grade of said railroad." But the defendant's evidence shows that the grade had then been established. As to this there is no

controversy.    The same evidence also shows that the grant ·of the right of way was made by the plaintiff with actual knowledge of and reference to that grade.    Under all the evidence the plaintiff's assertion in his first point that under the deed of 1899, the defendant had the right to construct its roadbed at such grade as it deemed proper could not have been affirmed.    The court might well have refused the point outright, but we think the affirmance of the point with the qualification given in the answer gave the plaintiff the benefit of all the instructions requested in the point that he was entitled to.

Under the view taken by the learned judge, as shown by his answer to defendant's second point and instructions given in his general charge, the questions, whether or not, and to what extent, the deposits complained of were made before the change of grade were material.    If so, the plaintiff's offer to show by the witness Barum that the grading complained of was done after August, 1901, and after the present grade of the railroad had been established was material and relevant. Aside from this, as the defendant had given testimony as to the amount of work done prior to the change of grade, it would seem that the plaintiff ought to have been permitted to show that the deposit of waste complained of was not made in the execution of the grade contemplated when the original grant was made.    Possibly, in view of the subsequent settlement made between the parties, the evidence would not be conclusive of the defendant's liability in this action for the excess of the deposit beyond the line of the slope required by the changed grade ; nevertheless, for the reason stated, it was proper that the plaintiff should be permitted to show all the facts pertinent to the question.

The judgment is reversed and a venire facias de novo awarded.